IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAVUN TYKEE MASSEY,            )
                               )
            Petitioner,        )
                               )
        v.                     )        1:13-CV-80
                               )
HERB L. JACKSON,               )
                               )
            Respondent.        )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on petition by Javun Tykee Massey pursuant to 28 U.S.C. § 2254. He contends that his convictions and consolidated sentence for second-degree murder and robbery with a dangerous weapon were obtained in violation of his constitutional rights. Respondent has moved for summary judgment. (Doc. 5.) The Court finds that the petition fails to identify any meritorious grounds for relief, and, thus, it must be dismissed.

**Background**

On February 25, 2010, in Cabarrus County Superior Court, the Honorable Tanya T. Wallace presiding, Mr. Massey pled guilty to second-degree murder and robbery with a dangerous weapon. (Doc. 8 at 31.) Pursuant to a plea agreement, Judge Wallace sentenced Mr. Massey to concurrent terms of 264-326 months for the murder charge and 97-126 months for the robbery charge. (*Id.* at 33-34, 48-49.) The North Carolina Court of Appeals affirmed Mr. Massey's convictions and sentence on March 1, 2011. *State v. Massey*, 209 N.C. App. 756 (table), 710 S.E.2d 707 (table), 2011 WL 721044, at *1 (March 1, 2011).

Mr. Massey filed a motion for appropriate relief ("MAR") in Cabarrus County Superior Court, which was dated December 21, 2011, and filed with the court on January 23, 2012. (Doc. 6-7 at 2; Doc. 6-8 at 2.) The Superior Court denied the MAR on April 17, 2012. (Doc. 6-8 at 2-3.) Mr. Massey filed a petition for writ of certiorari, which the North Carolina Court of Appeals denied on July 9, 2012. (Doc. 6-11 at 2.) Mr. Massey then sought discretionary review from the North Carolina Supreme Court, which denied his motion on October 4, 2012. (Doc. 6-13 at 2.) The § 2254 petition at issue here was stamped by the Clerk's Office as filed on January 30, 2013, but dated October 16, 2012, by Mr. Massey. (Doc. 1 at 1, 18.)

## Analysis

In reviewing petitions for habeas corpus by a prisoner in state custody, courts are "guided and restricted by the statutory language of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"), and by the "wealth of Supreme Court precedent interpreting and applying this statute." *Richardson v. Branker*, 668 F.3d 128, 132 (4th Cir.), *cert. denied*, 133 S. Ct. 441 (2012).

### I. Timeliness

Under AEDPA, a petitioner has one year to file a § 2254 petition, 28 U.S.C. § 2244(d)(1), beginning, in this case, from the date on which the criminal judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *Id.* at § 2244(d)(1)(A). After the North Carolina Court of Appeals affirmed Mr. Massey's convictions on March 1, 2011, he did not directly appeal to or petition for discretionary review by the North Carolina Supreme Court. Thus, the criminal judgment against Mr. Massey became final on April 5, 2011. *See* N.C.R. App. P. 32(b) (establishing that mandate issues twenty days after the filing of a written opinion, unless the court orders otherwise); N.C.R. App. P. 14(a), 15(b) (allowing

fifteen days after issuance of mandate to file notice of appeal or petition for discretionary review); *Saguilar v. Harkleroad*, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (holding that because there was no timely petition for discretionary review, § 2254 petitioner's convictions became final thirty-five days after the N.C. Court of Appeals affirmed them); *see also Gonzalez v. Thaler*, ___ U.S. ___, ___, 132 S. Ct. 641, 654 (2012) ("[B]ecause [§ 2254 petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired."). The one-year limitations period then ran for either 293 days until the Superior Court received Mr. Massey's MAR on January 23, 2012, or 260 days until Mr. Massey dated the MAR on December 21, 2011.[1]

Pursuant to 28 U.S.C. § 2244(d)(2), the limitations period remained tolled until the completion of state court proceedings related to the MAR. *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999) ("[T]he entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations

---

[1] Relevant authority suggests that the prison mailbox rule established in *Houston v. Lack*, 487 U.S. 266 (1988) (treating pro se prisoner's notice of appeal as filed when delivered to prison authorities for forwarding to the relevant court), does not apply to the filing of MARs. The North Carolina statute that governs the filing of MARs does not indicate that an MAR should be deemed filed at the time of its mailing, *see* N.C. Gen. Stat. § 15A-951(c); the case law indicates that North Carolina does not apply a mailbox rule for prisoner filings, *see, e.g.*, *Bryson v. Harkleroad*, No. 1:10CV36-3-MU, 2010 WL 1328313, at *3-4 (W.D.N.C. Apr. 1, 2010) (citing *State v. Kittrell*, 197 N.C. App. 403 (table), 677 S.E.2d 14 (table), 2009 WL 1522698, at *4 (June 2, 2009)); and at least three federal circuits have held that where a state does not apply a mailbox rule to filings in its courts, the federal courts should not apply a mailbox rule to filings in that state's courts when making calculations under § 2244(d), *see Howland v. Quarterman*, 507 F.3d 840, 845 (5th Cir. 2007), *abrogated by Campbell v. State*, 320 S.W.3d 338, 344 (Tex. Crim. App. 2010), *as recognized in Richards v. Thaler*, 710 F.3d 573, 577-78 (5th Cir. 2013); *Garcia v. Shanks*, 351 F.3d 468, 471-72 (10th Cir. 2003); *Vroman v. Brigano*, 346 F.3d 598, 603-04 (6th Cir. 2003); *but see Fernandez v. Artuz*, 402 F.3d 111, 115-16 (2d Cir. 2005) ("New York's rejection of the mailbox rule does not preclude its application by a *federal* court in tolling a *federal* statute of limitations.").

3

period for federal habeas corpus petitioners."). Under state law, the North Carolina Court of Appeals is the court of last review of a post-conviction MAR in a non-capital case. *See* N.C. Gen. Stat. § 7A-28(a) ("Decisions of the Court of Appeals upon review of motions for appropriate relief listed in G.S. 15A-1415(b) are final and not subject to further review in the Supreme Court by appeal, motion, certification, writ, or otherwise."). Courts in this circuit, therefore, have held uniformly that filing a petition with the North Carolina Supreme Court for review of the denial of an MAR does not toll the limitations period. *See, e.g.*, *Smith v. Woodard*, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (holding that "pursuit of collateral review in the North Carolina Supreme Court was improperly filed, and did not toll [petitioner's § 2254] filing period" (citing *Artuz v. Bennett*, 531 U.S. 4, 8 (2000))); *accord Mitchell v. McDade*, 11 F. App'x 351, 352 n* (4th Cir. 2001); *Gray v. Lewis*, No. 1:11CV91, 2011 WL 4022787, at *2 (M.D.N.C. Sept. 9, 2011) (Auld, M.J., recommendation, adopted by Beaty, C.J.); *Wilkerson v. Beck*, No. 1:07CV802, 2008 WL 2513758, at *2 (M.D.N.C. June 20, 2008) (Sharp, M.J., recommendation, adopted by Osteen, Jr., J.), *appeal dismissed*, 293 F. App'x 208 (4th Cir. 2008); *Williamson v. Jackson*, No. 2:07CV9-1-MU, 2007 WL 2669709, at *2 (W.D.N.C. Sept. 6, 2007), *appeal dismissed*, 266 F. App'x 304 (4th Cir. 2008). Thus, tolling of the limitations period ended on July 9, 2012, when the Court of Appeals denied certiorari.

Because either 260 or 293 days had run on the limitations period before Mr. Massey initiated state court review, he had at most 105 days, or until October 22, 2012, and as few as 72 days, or until September 19, 2012, to file his § 2254 petition or deposit it in the prison mailing system.[2] The record is clear that Mr. Massey did not mail or file his § 2254 petition before

---

[2] At least eight circuit courts have, in published opinions, considered whether the prisoner mailbox rule applies when determining the date on which a habeas petition was filed, and all

4

September 19, 2012, but less clear as to whether he did so before October 22, 2012. The date on which a filing is signed is often used as evidence of the date on which it was delivered to prison authorities, and on his petition Mr. Massey swore under penalty of perjury that the petition "was placed in the prison mailing system on October 16, 2012." (Doc. 1 at 18.) However, the Court did not receive the petition until over three months later. Given this unusually long delay, the Court afforded the parties additional time to submit evidence relevant to determining whether and when Mr. Massey delivered his petition to prison authorities for mailing. (Doc. 9.) The respondent filed a letter from a correctional officer stating that the mail log for the prison at which Mr. Massey is housed shows no "outgoing legal mail" from Mr. Massey between October 1, 2012, and January 31, 2013. (Doc. 10-1.) However, Mr. Massey filed a notarized statement reiterating that he delivered his petition to prison authorities on October 16, 2012. (Doc. 11.)

Given the factual dispute over the timeliness issue in this case, the Court will exercise its "discretion to leave unresolved the issue of whether this petition was timely filed" and "proceed instead to consider [Mr. Massey's] claims on the merits." *Grant v. Johnson*, No. 1:08cv714 (CMH/JFA), 2009 WL 2243713, at *4 (E.D. Va. July 22, 2009); *see Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002) ("Because the one-year statute of limitations is not jurisdictional, a federal habeas court is not duty-bound to consider the timeliness of a § 2254 petition.").

**II.    Merits**

---

have decided that it does. *See Morales-Rivera v. United States*, 184 F.3d 109, 110-11 & n.3 (1st Cir. 1999) (collecting cases and explaining that "there is no practical or principled justification for refusing to apply the prisoner mailbox rule to the filing of" habeas petitions); *see also Chapman v. Herron*, No. 1:11CV194, 2013 WL 2436439, at *2 n.9 (M.D.N.C. June 5, 2013) (Auld, M.J., recommendation) (collecting published Fourth Circuit cases declining to decide the issue and unpublished Fourth Circuit cases applying the mailbox rule to habeas filing). In addition, the rules governing § 2254 proceedings codify the mailbox rule. Habeas Corpus Rule 3(d) ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.").

5

Mr. Massey raises seven different grounds for relief in his petition, each of which he raised unsuccessfully before the MAR court, and the seventh of which he previously raised unsuccessfully on direct appeal to the North Carolina Court of Appeals. The Court will only grant a writ of habeas corpus for a claim adjudicated on the merits in state court if the state court's adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Richardson*, 668 F.3d at 138.

First, Mr. Massey contends that he did not enter his guilty plea voluntarily, knowingly, or intelligently. (Doc. 1 at 5-6.) He states that while he did understand the nature of the charges, the trial court "failed to determine that defendant did understand the nature of the charge(s) in open court." (Doc. 1 at 5.) When he raised this issue in his MAR, (Doc. 6-7 at 13-17), the state court found it was without merit. (Doc. 6-8 at 2-3.)

The transcript of the plea hearing shows that, before accepting Mr. Massey's plea, Judge Wallace asked a number of questions directed towards whether Mr. Massey was entering his plea voluntarily, whether he understood the nature of the charges against him, and whether he was fully informed of the consequences of his plea. (Doc. 8 at 28-35.) His answers to those questions indicate he was competent to enter a guilty plea, that he understood the charges, and that his decision to plead guilty was knowing and voluntary; Mr. Massey does not identify anything to the contrary. *See Brady v. United States*, 397 U.S. 742, 747 n.4 (1970) ("[T]he record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969))); *Walton*

6

*v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) ("[C]ourts look to the totality of the circumstances surrounding the guilty plea" when evaluating its constitutional validity, "granting the defendant's solemn declaration of guilt a presumption of truthfulness." (citing *Henderson v. Morgan*, 426 U.S. 637, 648 (1976) (plurality opinion); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970))). All of the evidence is that Mr. Massey's plea was voluntary and informed, such that the MAR court's determination to that effect was reasonable and not contrary to clearly established federal law.

Second, Mr. Massey contends that the state breached the terms of his plea agreement by submitting an altered plea agreement to the trial court. (Doc. 1 at 6-8.) The MAR court found this claim to be without merit. (Doc. 6-8 at 2-3; *see* Doc. 6-7 at 17-21.)

The precise basis for this claim is unclear. (*See* Doc. 8 at 5-6.) Mr. Massey cites two different exhibits titled "Transcript of Plea." The first is signed only by Mr. Massey and his trial counsel and lists maximum possible sentences of 471 and 201 months, respectively, for the murder and robbery convictions. (Doc. 8 at 17-21.) The second is signed by the deputy clerk of court, the prosecutor, and the presiding judge, as well as by Mr. Massey and his trial counsel, and lists maximum possible sentences of 479 and 229 months. (Doc. 8 at 50-54.) Mr. Massey apparently alleges that his plea agreement was altered without his knowledge or consent. However, the natural reading of the record is that the first transcript-of-plea document was a draft or an offer and the second transcript-of-plea document was the final version. Moreover, at the plea hearing the presiding judge explicitly informed Mr. Massey that the maximum for the murder charge was 479 months and the maximum on the robbery was 229 months; these are the same numbers on the second transcript of plea signed by all the relevant actors. Mr. Massey has not made any specific arguments that would counsel in favor of a different reading of the record.

7

Finally, Mr. Massey has not shown any prejudice. In relevant part, the plea transcripts were identical: each version called for a sentence of 264-326 months on the murder and 97-126 months on the robbery. (Doc. 8 at 20, 53.) The Court therefore finds this claim meritless and concludes that the MAR court's decision was reasonable.

Third, Mr. Massey contends that the factual basis supporting his guilty plea rested on the state's misrepresentation of essential facts. (Doc. 1 at 8-9.) He makes only broad, conclusory allegations in support of this claim, from which there is no discernible basis for concluding that the MAR court's adjudication to the contrary, (Doc. 6-8 at 2-3; *see* Doc. 6-7 at 21-23), was unreasonable. The claim is without merit.

Fourth, Mr. Massey contends that the trial court erroneously found his prior criminal record level for sentencing purposes. (Doc. 1 at 10.) The MAR court denied this claim. (Doc. 6-8 at 2-3; *see* Doc. 6-7 at 23-26.)

To the extent he contends that the trial court incorrectly applied state law, this is not a valid ground for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). To the extent he contends that the alleged error rendered his guilty plea invalid, his argument lacks merit. A defendant must be aware of the "direct consequences" of his guilty plea. *Brady*, 397 U.S. at 755 (internal quotation marks omitted). Even assuming the correct prior record level was III, as Mr. Massey contends, this would not have altered the maximum possible sentence for the crimes to which Mr. Massey was pleading guilty, since the maximum is determined by the highest possible prior record level, not by the record level found by the court for the defendant. The defendant has cited no authority for the proposition that the Constitution requires a sentencing court to determine a defendant's prior record level and to inform him of

8

that level and the corresponding maximum punishment for that record level before the defendant can enter a knowing guilty plea. The Court finds that the MAR court's denial of this ground for relief was not contrary to and did not unreasonably apply clearly established federal law.

Fifth, Mr. Massey contends that his trial counsel should have been disqualified from representing him because the trial counsel held a position in the Cabarrus County government. (Doc. 1 at 11-12.) While Mr. Massey is not clear about the constitutional basis for this claim, it appears to be an ineffective assistance of counsel claim. As such, to establish a conflict of interest rising to the level of a Sixth Amendment violation, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980). The Court will discuss this claim together with Mr. Massey's sixth claim, which is that he received ineffective assistance of counsel. (Doc. 1 at 12-13.)

The two-part *Strickland* test applies to ineffective-assistance claims "arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984) (holding that convicted defendant complaining of ineffectiveness of counsel's assistance must show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Although Mr. Massey alleges that counsel's performance was deficient in numerous ways, he does not explain what prejudice he suffered. He does not allege that he would have sought more favorable plea bargain terms in the absence of the allegedly deficient counsel he received, let alone that he would have obtained such terms or that the trial court would have accepted more favorable terms. Nor does he allege that he would have proceeded to trial, much less that he would not have been convicted or would

9

have received a more favorable sentence. In the absence of any showing of prejudice, the MAR court's adjudication of the fifth and sixth claims, (Doc. 6-8 at 2-3; *see* Doc. 6-7 at 27-34), was not contrary to nor an unreasonable application of *Strickland*.

Seventh, Mr. Massey contends that the trial court erroneously found as an aggravating factor that he joined with one or more other persons in committing his offenses and was not charged with committing a conspiracy. (Doc. 1 at 13-14.) This claim was raised on appeal of the underlying conviction to the North Carolina Court of Appeals, which rejected it. *Massey*, 2011 WL 721044, at *1. Whether there was a sufficient basis for finding this aggravating factor is a question of state law not appropriate for habeas review. *Estelle*, 502 U.S. at 67-68.

It is therefore **ORDERED** that Respondent's Motion for Summary Judgment, (Doc. 5), is **GRANTED** and Mr. Massey's petition, (Doc. 1), is **DISMISSED** with prejudice. There being no substantial showing of a denial of a constitutional right, nor a debatable procedural ruling, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); Habeas Corpus Rule 11(a).

This the 5th day of September, 2013.

_____
UNITED STATES DISTRICT JUDGE